Joseph WHITNEY, Appellant,

v.

Asa E. BUTTRICK, Respondent.

No. C4-85-408.

Court of Appeals of Minnesota.

Nov. 5, 1985.

Review Denied Jan. 23, 1986.

John L. Preuter, Minneapolis, for appellant.

Kevin P. Keenan, Charles E. Lundberg, Minneapolis, for respondent.

Heard, considered, and decided by HUS-PENI, P.J., and CRIPPEN and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Joseph Whitney (appellant) sued his attorney Asa Buttrick (respondent) for legal malpractice, as a result of respondent's handling of the sale of appellant's 75% interest in Imperial Developers (Imperial) to Allen Schefers, a 25% partner in Imperial. The case was tried to a jury which found respondent 75% negligent, appellant 25% negligent, but found no damages.

Appellant moved for a *Schwartz* hearing, a judgment notwithstanding the verdict, or a new trial. Appellant claimed the court erred in excluding rebuttal testimony on damages by his expert, Thomas Krenn, and in instructing the jury that legal malpractice damages were limited to out-of-pocket damages. From the trial court's denial of his motions, Whitney appeals.

## FACTS

Appellant, 75% shareholder of Imperial (Imperial), and his 25% partner, Allen Schefers, discussed the possibility of Schefers buying appellant out. Appellant was initially concerned about the possible tax consequences of the sale, but Schefers assured him that tax questions could be worked out to appellant's satisfaction. Schefers contacted Asa Buttrick, an attorney who claimed he had tax experience. Later Schefers met with respondent, appellant, and Imperial's accountant (Whitehead) to negotiate terms of the sale.

Respondent made a direct representation to appellant, in the presence of Schefers and Whitehead, that he could structure the sale so appellant would pay *no* tax on the transaction. Respondent claimed he had done similar "no tax" sales in the past. Appellant testified that he would not have gone through with the sale unless it could have been structured to yield no tax to him.

Under the negotiated terms of the sale, respondent structured the sale to give Schefers a stepped-up basis and other tax advantages.

For a 75% share of Imperial, appellant received $200,150.90 (before taxes) paid as follows: cash ($272.63), assets ($80,050), and a note ($129,000). Appellant also assumed approximately $11,000 of Imperial's liabilities, for a total "sale" price of $200,-150.90.

The hoped for tax advantages to appellant never materialized. However, appellant did not discover that the sale was *not* a "no tax" transaction until March, 1977, after the sale was completed. Even though appellant received only a few hundred dollars in cash, the Internal Revenue Service notified him that he had a incurred a tax liability of $98,105 as a result of the sale.

Appellant sued respondent for malpractice, claiming that respondent negligently misrepresented that he could structure a "no-tax" sale. Appellant also alleged that respondent misrepresented his expertise in structuring "no tax" transactions. At the same time, appellant sued Schefers and Whitehead, but he later dismissed these claims.

The case against respondent was tried to a jury. During the trial appellant's expert, attorney Thomas Krenn, testified that respondent deviated from the applicable standard of care by failing to disclose the tax

consequences of the sale and by failing to bring an expert in on the transaction.

Following appellant's case in chief, respondent called his only witness, Russell Van Michaletz. Van Michaletz, a certified public accountant and attorney, testified that the transaction could not have been structured with no tax to appellant, supporting respondent's position that appellant had suffered no damages. Van Michaletz did not address respondent's promise to appellant that the sale would be structured with *no* tax liability.

In preparation for trial, Van Michaletz prepared an analysis of five other options for structuring the sale, making assumptions about tax rates and other figures. His analysis was not completed until less than a month before trial because the IRS had not supplied respondent with certain tax figures. Although the analysis without the IRS figures had been available earlier, appellant did not request it until Van Michaletz added the IRS figures.

On rebuttal, appellant attempted to introduce further testimony by Krenn on other methods of structuring the transaction with less tax. The trial court sustained respondent's objections to the lower third of appellant's exhibit AH, which showed other possible structures of the sale yielding lower tax than appellant had paid, based on surprise and inability to rebut.

The court limited Krenn's testimony to rebuttal of defendant's exhibits six and seven prepared by Van Michaletz. Exhibits six and seven supported respondent's claims that appellant suffered no damage because the transaction could not have been constructed as a "no tax" sale.

The trial court, over appellant's objection, gave an out-of-pocket damage instruction which prohibited the jury from considering the benefit of the sale from Whitney to Schefers and from finding taxes paid as an element of damages.

The jury returned a verdict finding Buttrick 75% negligent and Whitney 25% negligent, but finding that Whitney suffered no damages.

From the trial court order denying judgment notwithstanding the verdict (JNOV) or a new trial, appellant appeals.

## ISSUES

1. Did the trial court err in admitting testimony of respondent's expert, testimony which incorporated certain accounting presumptions?

2. Did the trial court err in excluding rebuttal testimony on damages by appellant's expert?

3. Did the trial court's damage instruction mislead and confuse the jury and fail to convey the applicable law?

4. Did the trial court properly deny appellant's claim for attorney fees?

## ANALYSIS

### I

*Admission of Van Michaletz' testimony*

Prior to trial, appellant moved the court to exclude the testimony of respondent's expert, Russell Van Michaletz. Van Michaletz was prepared to testify that the transaction could not have been structured to yield appellant a lower tax bill. The court denied appellant's motion.

On appeal, appellant contends this testimony should not have been admitted because Van Michaletz based his testimony on speculation rather than on readily ascertainable facts. Van Michaletz' qualifications as an expert are not at issue.

■ Expert opinion must be based on readily ascertainable facts. *Gerster v. Wedin,* 294 Minn. 155, 160, 199 N.W.2d 633, 636 (1972), *Albert Lea Ice & Fuel v. U.S. Fire Ins. Co.,* 239 Minn. 198, 58 N.W.2d 614 (1953). "[T]he opinion of an expert must be based on facts sufficient to form an adequate foundation for his opinion * * * an opinion based on speculation and conjecture has no evidentiary value." *Gerster* 294 Minn. at 160, 199 N.W.2d at 636.

■ We disagree with appellant's characterization of Van Michaletz' assumptions

as speculative. Van Michaletz testified that the assumptions he made were the sort made regularly by tax planners and that, without making such assumptions, he would have been unable to do his analysis. These kinds of assumptions are readily ascertainable. We hold the trial court did not abuse its discretion in admitting Van Michaletz' testimony.

## II

*Admission of Krenn's rebuttal testimony*

Next, appellant argues that the trial court erred in refusing to allow Krenn's rebuttal testimony. Respondent makes three arguments in support of exclusion of Krenn's testimony. First, that Krenn's testimony was not rebuttal but was, instead, a presentation of a new theory of appellant's case. Second, that exclusion of Krenn's testimony was proper because appellant failed to update an interrogatory requesting disclosure of the subject matter of Krenn's expert witness testimony. Third, that the court properly excluded Krenn's rebuttal testimony due to unfair surprise and inability to rebut.

We do not agree. Appellant's case was premised on the theory of misrepresentation. Appellant claimed as his damages the taxes on the transaction. Krenn's proposed rebuttal testimony was aimed at refuting respondent's theory of the case, namely that the transaction could not have been structured to yield less tax. Krenn would have testified on rebuttal that the sale could have been structured to give appellant a tax liability of less than the $98,105 actually incurred.

■ Rebuttal evidence explains, contradicts, or refutes the defendant's evidence. "Its purpose is to cut down defendant's case and not merely to confirm that of plaintiff." *Van Tassel v. Patterson*, 235 Minn. 152, 160, 50 N.W.2d 113, 117 (1951) cited in *Farmers Union Grain Terminal v. Industrial Electric*, 365 N.W.2d 275, 277 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. June 14, 1985).

■ During appellant's case in chief, Krenn testified on the standard of care in a malpractice action. Only after respondent's expert, Van Michaletz, gave testimony showing other methods of structuring the sale to support respondent's defense did appellant call Krenn in rebuttal, attempting to disprove Van Michaletz' theory. This is proper rebuttal testimony and not presentation of a new theory of the case.

■ Appellant does not dispute respondent's charge that appellant failed to update the interrogatories to reflect Krenn's testimony rebutting Van Michaletz' theory. However, an appellant will not always know what testimony he will present on rebuttal, and he need not anticipate what rebuttal witnesses might testify to and disclose all possible rebuttal testimony in interrogatories.

A review of the transcript of the *in limine* conference on Krenn's rebuttal testimony reveals that appellant was not entirely to blame for the delay in disclosure. Neither appellant nor respondent had IRS tax data necessary to complete Van Michaletz' computations until less than a month before trial. Under the circumstances, updating interrogatories would have been difficult.

■ Once Krenn received the Van Michaletz exhibits containing the IRS figures, he analyzed them and prepared his own exhibit. This exhibit, AH, excluded by the trial court, showed other possible configurations of the sale. We find appellant's delay in presenting the exhibit to respondent and the court reasonable under these circumstances.

■ When a party seeks to introduce expert testimony not previously noticed, determination of the appropriate remedy is within the trial court's discretion. *Phelps v. Blomberg Roseville Clinic*, 253 N.W.2d 390, 394 (Minn.1977).

*Cornfeldt v. Tongen*, 262 N.W.2d 684 (Minn.1977) is controlling here. In that case, the court restricted testimony of two

medical expert witnesses whose identity had not been revealed prior to trial. The *Cornfeldt* court reasoned:

> [W]e caution trial courts from readily excluding expert testimony in malpractice cases for inadvertent failure to disclose that testimony during discovery. Exclusion is justified only when prejudice would result. * * * When failure to disclose was not willful, courts should consider alternative methods short of exclusion for preventing prejudice.

*Id.* at 697. Granting a continuance is preferred over exclusion of evidence. *Quill v. Trans World Airlines,* 361 N.W.2d 438 (Minn.Ct.App.1985).

Among the factors courts should consider when determining whether to exclude the testimony are "the explanation, if any, for the failure to name the witness, the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance." 8 C. Wright & A. Miller, Federal Practice and Procedure § 2050, *cited in Murphy v. Magnolia Electric Power Ass'n,* 639 F.2d 232, 235 (5th Cir.1981).

This is not a true case of unfair surprise. Van Michaletz was familiar with the methods used by Krenn and with respondent's theory of the case which appellant was attempting to rebut. The examples in the excluded exhibit were the same sort Van Michaletz had used in his own testimony. Van Michaletz could have reviewed and evaluated Krenn's evidence during a short continuance and been recalled for surrebuttal, if necessary. Respondent makes no claim Van Michaletz was unavailable for surrebuttal.

Moreover, respondent did not move for a continuance. The court simply granted his motion to exclude the testimony. Van Michaletz had extensively researched the issue and presented testimony during respondent's case in chief. A short continuance could have accommodated both parties. Admission of Krenn's rebuttal would have given the jury a clear picture of the competing claims of the parties.

We hold that because respondent would not have been prejudiced by admission of Krenn's rebuttal testimony, and because appellant's failure to disclose was not willful, the trial court abused its discretion in excluding Krenn's rebuttal testimony which went to the heart of respondent's theory that appellant suffered no damages. Accordingly, we remand for a new trial on damages.

III

*Jury instructions*

Appellant claims the trial court erred in restricting the jury on damages to an out-of-pocket theory prohibiting the jury from considering the benefit of his contract with Schefers. The court ruled that appellant was not entitled to claim taxes as damages.

We hold that, subject to his obligation to carry the burden of proof, appellant, on the facts of this case, should have been allowed to argue taxes as an element of damage.

The trial court instructed the jury as follows:

> A party seeking damages must prove the nature, extent, duration and consequences of the harm. An award of damages must not be based upon speculation or guess. In awarding damages you should not put a plaintiff in a better position that he would have been in if no wrong had been done. The damages recoverable for negligent misrepresentation are those necessary to compensate the Plaintiff for the pecuniary loss to him of which the misrepresentation is a direct cause, including the difference between the value of what he has received in the transaction and its purchase price or other value given for it, and pecuniary loss suffered otherwise as a consequence of Plaintiff's reliance upon the misrepresentation.
>
> *The damages recoverable for negligent misrepresentation do not include the benefit of Plaintiff's contract with Allen Schefers.*

(Emphasis added). On post trial motion, the court stated:

The evidence presented on damages followed the Minnesota rule of "out-of-pocket" damages. The rule limits the recovery to the difference between what the Plaintiff parted with and what he received, plus any pecuniary loss suffered otherwise as a consequence of Plaintiff's reliance upon a misrepresentation. There was no evidence presented that there was any difference between what Plaintiff parted with and what he received. *Nor was there any evidence of Plaintiff's pecuniary loss.* The evidence showed the Plaintiff wanted to sell his business to Mr. Schefers. *He sold his business for the price he agreed on and received the fair price.* Under the Minnesota Rules Plaintiff suffered no damages. That's what the jury awarded him; and, therefore, the verdict is not grossly inadequate, influenced by passion or prejudice.

(Emphasis added). This ruling was in error.

The court made much of the fact that appellant sold a business worth $200,150.90, received $200,150.90, the agreed on amount, and, thus, received a fair price. The fairness of the price appellant received from Schefers is not at the heart of appellant's claim. However, in this case the terms of the sale must enter into any fair deliberation of the measure of damages.

It is foolish to argue that, had appellant been properly advised during negotiations prior to the sale that he would incur a tax liability of $98,105, he would still have considered terms of $272.63 down, $80,050 in assets, $11,171.73 in liabilities, and $129,000 in a long-term note a fair price. Had he known he would incur a $98,105 liability, appellant may well have decided not to sell the business at all, held out for a higher price, or demanded enough cash up front to enable him to pay the anticipated taxes. The only reason appellant sold his interest in Imperial for terms so favorable to Schefers was that he expected to end up with $80,050 in assets and the $129,000 note on which he could collect payments over a period of years, with no tax consequences.

Not only the stated price for appellant's share of the business but also the *terms* of the sale have to be considered.

*Autrey v. Trkla,* 350 N.W.2d 409 (Minn. Ct.App.1984) is controlling here. *Autrey* acknowledges that the out-of-pocket rule *normally* limits damages to the difference between what plaintiff parted with and what he received. *Id.* at 412. However, *Autrey* creates an exception to the out-of-pocket rule where an appellant would be left uncompensated for damages caused by respondent's misrepresentation under the out-of-pocket rule. Here the uncompensated damages may be the taxes paid by appellant under *Autrey.*

In *Autrey,* this court concluded the out-of-pocket damage rule was inappropriate because it

assumes that the plaintiff received something from the defendant and that it was less than what he or she anticipated receiving. Since Autrey purchased the property from Ricci, not Trkla, the out-of-pocket measure of damages is inapplicable to this case.

*Id.* at 412. Here, appellant sold his interest in Imperial to a *third party,* Schefers. He did not sell to respondent. Thus, the out-of-pocket measure of damages generally applicable to a misrepresentation between buyer and seller is irrelevant in this lawsuit. The harm to appellant arises not out of the sale, but rather out of the negligent misrepresentation of a third party in a collateral, but related, transaction to the sale.

This was a professional malpractice case between Whitney and his attorney, Buttrick, not a suit between Whitney and Schefers. Although the trial court was technically correct that Whitney got the agreed "price" when he sold his interest in Imperial to Schefers, the sale price is not the appropriate measure of damages where the propriety of the sale is not at issue.

Rather, if he meets his burden of proof, appellant is entitled to damages flowing from respondent's negligent misrepresentation. At retrial on damages, appellant has the burden of proof, but has the right to

show damage elements other than out-of-pocket loss based on sale price.

The nature of appellant's claim against respondent is that respondent's representation induced appellant to sell on the terms that he did. Given the trial court's instruction restricting the jury from considering the benefit of appellant's contract with Schefers and its ruling that the taxes paid by appellant could not be considered an element of appellant's damages, it became logically impossible for the jury to consider awarding any damages.

The jury should have been instructed that Buttrick could be found liable for damages proximately resulting from his negligent misrepresentation that he could structure the sale with no tax. The court should also have instructed the jury that the taxes paid could be an element of those damages if the jury found from the evidence that the sale could have been structured in a manner to yield a tax liability of less than $98,105. The court should not have restricted the jury to determining whether appellant received a fair price from Whitney.

■ We hold the trial court erred in restricting the damage instruction. On retrial, if appellant carries his burden of proof that the transaction could have been structured with no tax or less tax, he is entitled to a jury instruction that excess taxes paid are an element of damages.

## IV

*Attorney fees.*

Appellant claims the trial court erred in not awarding him attorney fees for his suit in tax court, for his suit against Whitehead and Schefers, and for his suit against respondent. Appellant also claims respondent is liable for interest and penalties due on the taxes.

■ It is unclear from the briefs what the tax court litigation involved. Apparently appellant brought the suit to have the interest and penalties dismissed. If that is the case, he cannot recover his attorney

fees because the recovery of such fees is neither authorized by statute or case law. *Langeland v. Farmers State Bank of Trimont,* 319 N.W.2d 26, 33 (Minn.1982). Likewise, there is no legal authority for an award of attorney fees in the action by appellant against Schefers and Whitehead that appellant voluntarily dismissed.

It is premature for this court to decide whether respondent can be held liable for interest and penalties on the taxes assessed against appellant. Respondent has not been found liable for the taxes themselves. Any possible liability for penalties and interest cannot be determined until a jury decides who is responsible for payment of the taxes.

■ Finally, appellant's claim that respondent is liable to him for attorney fees in suing respondent for legal malpractice fails in the absence of authorization by statute or case law. Attorney fees and expenses are not generally included in the measure of recoverable damages for negligence. *Hill v. Okay Constr.,* 312 Minn. 324, 252 N.W.2d 107, 121 (1977).

Appellant also claims this case warrants reversal because the jury's verdict is irreconcilably inconsistent. Because of our decision to remand for a new trial based on erroneous exclusion of Krenn's rebuttal testimony and on the erroneous damage instruction, we do not reach that issue.

## DECISION

The trial court did not err in admitting respondent's expert testimony.

The trial court erred in excluding rebuttal testimony of appellant's expert.

The trial court erred in restricting the jury on damages to an out-of-pocket theory.

The trial court properly denied appellant's claim for attorney fees.

Reversed and remanded for a new trial on damages.